UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LISETTE VEGA-RUIZ,

               **MEMORANDUM & ORDER**
     Plaintiff,        19-CV-0537 (DRH)(AYS)

 -against-

NORTHWELL HEALTH (formerly NORTH SHORE-
LONG ISLAND JEWISH HEALTH SYSTEM), LONG
ISLAND JEWISH VALLEY STREAM (formerly
FRANKLIN HOSPITAL IN VALLEY STREAM), and
LONG ISLAND JEWISH MEDICAL CENTER,

     Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**

Eisenberg & Baum, LLP
24 Union Square East, Fourth Floor
New York, New York 10003
By: Andrew Rozysnki, Esq.

**For Defendants:**

Collazo Florentino & Keil, LLP
747 Third Avenue, 25th Floor
New York, New York 10017
By: John P. Keil, Esq.
   Daniel J. LaRose, Esq.

**HURLEY, Senior District Judge:**

   Plaintiff Lisette Vega-Ruiz ("Plaintiff") brought this action for violations of the Patient Protection and Affordable Care Act against Northwell Health (formerly North Shore-Long Island Jewish Health System), Long Island Jewish Valley Stream (formerly Franklin Hospital in Valley Stream), and Long Island Jewish Medical Center (collectively "Defendants") seeking declaratory and injunctive relief and for damages to redress injuries suffered as a result of Defendants'

alleged failure to provide Plaintiff with an American Sign Language ("ASL") interpreter in violation of section 1557 of the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116. Presently before the Court is Defendants' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1] For the reasons set forth below, the motion is granted.

## BACKGROUND

The following allegations are taken from the Complaint ("Compl.") and assumed true for purposes of this motion, unless otherwise noted.

Plaintiff is a deaf individual with limited English proficiency who communicates primarily in American Sign Language ("ASL"). (Compl. [ECF No. 1] ¶ 5.) Defendants operate multiple hospitals in New York City and Long Island. (Compl. ¶¶ 1, 6-8.) Defendants receive federal financial assistance. (Compl. ¶ 9.)

Plaintiff is the health care proxy for her brother, Jose Vega, who is a "hearing (i.e. non-deaf) individual." (Compl. ¶¶ 14-15.) On or around October 13, 2015, Plaintiff accompanied her brother to the Long Island Jewish Valley Stream for a scheduled filter placement surgery. (Compl. ¶ 16.) "During this visit, Plaintiff repeatedly requested an ASL interpreter in order to assist her brother and understand the procedure being performed," however Defendants did not provide "any auxiliary aids or services" to Plaintiff. (Compl. ¶¶ 17-18.)

Plaintiff alleges, upon information and belief, that she "was told by Defendants' staff that she was not entitled to an ASL interpreter because she was not a patient receiving treatment, and since her brother (the patient) was hearing, they were under no obligation to comply with her request." (Compl. ¶ 19.) Instead, "one member of Defendant's staff named Zoila informed

---

[1] Plaintiff also sought equitable relief in her Complaint. That request prompted Defendants to move to dismiss the subject claim for lack of subject-matter jurisdiction under Fed. R. Civ. P 12(b)(1). Upon receipt of the motion papers, Plaintiff withdrew the equitable relief claim rendering the Rule 12(b)(1) application moot.

Plaintiff in writing that a Spanish-speaking translator would come at 6:30 p.m. the evening of the surgery, and would return at 9:00 a.m. on the following day." (Compl. ¶ 21.) Plaintiff contends that the Spanish-speaking translator was unable to provide effective communication for her, (Compl. ¶ 22) and that "Defendants relied entirely on lip-reading and writing to attempt to communicate with Plaintiff." (Compl. ¶ 23.) As a result, Plaintiff did not understand details about the treatments provided to her brother, such as side effects and dosage instructions. (Compl. ¶ 25.) Plaintiff also alleges, upon information and belief, that "Defendants have a standing policy of denying auxiliary aids and services to deaf and hard of hearing companions." (Compl. ¶ 20.)

## DISCUSSION

### I. *Rule 12(b)(6) Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

I. *The Parties' Arguments*

In their motion to dismiss, Defendants argue that Plaintiff's claim should be dismissed because she has not alleged an intentional violation of the Rehabilitation Act, and because her claims are barred by the Rehabilitation Act's statute of limitations. (Defs.' Mem. in Supp. [ECF No. 18] at 7, 9.) In her opposition, Plaintiff argues that she has made a claim for deliberate indifference and is therefore entitled to damages, and that a four-year statute of limitations applies. (Pl.'s Mem. in Opp. [ECF No. 19] at 3, 7.)

II. *Statute of Limitations*

Section 1557 of the ACA, which was enacted in 2010, provides that "an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et

seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), or section 794 of title 29 [also known as Section 504 of the Rehabilitation Act], be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance." 42 U.S.C. § 18116(a). The parties agree that the relevant anti-discrimination statute of the ones enumerated in the ACA for purposes of this case is § 504 of the Rehabilitation Act, which says "No otherwise qualified individual with a disability in the United States…shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794.

Given that § 1557 does not provide a statute of limitations, Defendants argue that this Court should apply New York's three-year statute of limitations for personal injury actions as is generally applied to Rehabilitation Act claims. (Defs.' Mem. in Supp. at 9-10.) As noted, Plaintiff argues that the relevant statute of limitations comes from 28 U.S.C. § 1658, which provides that, "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after [1990] may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658.

The parties both cite to *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), a Supreme Court case that considered whether § 1658's four-year statute of limitations applied to a 1991 amendment to a pre-1990 statute. Reasoning that "[w]hat matters is the substantive effect of an enactment—the creation of new rights of action and corresponding liabilities—not the format in which it appears in the Code," the Court found that § 1658's four-year statute of limitations applied to the amendment at issue, even though the underlying statute pre-dated 1990,

because the plaintiff's claim arose under the 1991 amendment. *Id*. at 381. The Court held that "a cause of action arises under an Act of Congress enacted after December 1, 1990—and therefore is governed by § 1658's 4-year statute of limitations—if the plaintiff's claim against the defendant was made possible by a post-1990 enactment." 541 U.S. 382 (internal quotations omitted). Though one of Congress's motivations for enacting § 1658 was to minimize the practice of borrowing state statutes of limitations, the Court noted that its approach left "in place the 'borrowed' limitations periods for pre-existing causes of action." *Id.* at 380, 382.

In support of their respective positions, the parties cite to what seem to be the only two cases to address the specific question of what statute of limitations applies to discrimination claims under § 1557 of the ACA. Defendants for their part urge this Court to follow the approach taken in *Smith v. Highland Hosp. of Rochester,* 2018 U.S. Dist. LEXIS 170250 (W.D.N.Y. Oct. 2, 2018), which applied the state statute of limitations of the relevant anti-discrimination statute referenced in § 1557 of the ACA. Plaintiff argues the Court should follow the approach taken in *Palacios v. MedStar Health, Inc.*, 298 F. Supp. 3d 87 (D.D.C. 2018), which applied § 1658's four-year statute of limitations.

In *Smith*, the plaintiff, a transgender man, brought a claim under the ACA based on discrimination he suffered when he sought treatment at the defendant's hospital. *Smith,* 2018 U.S. Dist. LEXIS 170250, at *1. Deeming Title IX to be the only applicable statute of the ones referenced in § 1557 of the ACA, the court applied the three-year New York state statute of limitations for personal injury actions. *Id.* at * 6, 7. In a footnote, the court rejected the notion that § 1658's four-year statute of limitations would apply because Title IX was enacted in 1972. *Id.* at * 7 n.3. By contrast, the *Palacios* court found that the four-year statute of limitations in § 1658 applied to a gender discrimination claim brought under § 1557 of the ACA. *Palacios*, 298

F. Supp. 3d at 91. Citing to *Jones*, the *Palacios* court reasoned that because § 1557 was enacted in 2010 and is silent as to the statute of limitations, § 1658's four-year statute of limitations applies to discrimination claims brought under it. *Id*.

Here, though the complaint formally alleges a violation of the ACA, Plaintiff's claim is made possible by the Rehabilitation Act. *See Jones*, 541 U.S. at 382. The ACA explicitly borrows from the Rehabilitation Act, among other statutes, and says "the enforcement mechanisms provided for and available under such [Section 504 of the Rehabilitation Act] shall apply for purposes of violations of this subsection." 42 U.S.C. § 18116(a). The ACA does not create a new cause of action, but rather ensures that existing anti-discrimination statutes apply to "health program[s] or activit[ies]" that receive Federal funding. *Id*.

Indeed, Plaintiff's arguments regarding the sufficiency of her allegations recite the standard for stating a Section 504 Rehabilitation Act claim. (Pl.'s Mem. in Opp. at 3-4.) Thus, Plaintiff's claim could have been brought directly under the Rehabilitation Act. *See, e.g. Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (Rehabilitation Act claim brought before enactment of the ACA by deaf wife of patient against hospital for, inter alia, failure to provide ASL translator). Moreover, other courts dealing with discrimination claims under both the ACA and Rehabilitation Act have found it unnecessary to analyze ACA claims where there is also an Rehabilitation Act claim "because Section 1557 [of the ACA] explicitly incorporates Section 504 of the Rehabilitation Act." *Vega-Ruiz v. Montefiore Med. Ctr.*, 2019 WL 3080906, at *3 n.3 (S.D.N.Y. July 15, 2019) (citing *Southeast Pennsylvania Transp. Auth. v. Gilead Scis., Inc.*, 102 F. Supp. 3d 688, 698-99 (E.D. Pa. 2015); *Weinreb v. Xerox Business Services, LLC Health and Welfare Plan*, 323 F.Supp.3d 501, 520-21 (S.D.N.Y. 2018)).

Given the above, the Court is persuaded by the reasoning in *Smith* that the New York state statute of limitations should apply to Plaintiff's claim, which is, in effect, a Rehabilitation Act claim. *Smith,* 2018 U.S. Dist. LEXIS 170250, at *6-7; s*ee also Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993) (applying New York's three-year statute of limitations for personal injury actions to Rehabilitation Act claim). Plaintiff therefore had three years to bring her claim. Because she filed her complaint on January 28, 2019, more than three years after the October 13, 2015 hospital visit, her claim is untimely. Accordingly, Defendants' motion to dismiss is granted and the Court need not address the plausibility of Plaintiff's claim.

## CONCLUSION

For the foregoing reasons, Defendants' Rule 12(b)(6) motion to dismiss is granted. The Clerk of Court is directed to enter judgment and close the case.

**SO ORDERED.**

Dated: Central Islip, New York  　　　　　　　　　　 s/ Denis R. Hurley
　　　　January 14, 2020  　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge